(672 P.2d 251)
No. 54,727

STATE OF KANSAS, *Appellee*, v. INDEMNITY INSURANCE CO. OF NORTH AMERICA, *Appellant*.

Opinion filed November 10, 1983.

*Ronald P. Wood*, of Hines, Wood & Ahlquist, of Erie, for the appellant.

*Edwin H. Bideau, III*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

FOTH, C.J.: This is an appeal by the corporate surety on a criminal appearance bond from a judgment against it after forfeiture of the bond. Appellant contends it should have been relieved of liability on the bond because after the bond was given the State filed additional charges against the defendant-principal without notice to the surety, thereby increasing the surety's risk. We disagree and affirm.

On September 14, 1981, Roger D. Davis was charged with aggravated assault in Neosho District Court. It was charged that he threatened the victim "with the intent to commit a felony, to wit: Rape . . . ." Bond was set at $5,000. On September 15, he applied for bond with August Rua who was an agent for the

appellant Indemnity Insurance Company of North America. Rua issued the bond and charged Davis a premium of $500. The bond was a "continuing bond" conditioned that the defendant "shall personally be and appear before the Judge of the District Court on the 21 day of Sept., 1981, at 1:30 P.M., and remain in attendance from day to day and time to time, as the case may be continued or remain undisposed of to answer a charge of Aggravated Assault, and not depart without leave, and abide by the judgment of the court in the premises  .  .  .  ."

Davis first appeared on the aggravated assault charge on September 21, 1981, when the case was continued to October 5. On the latter date it was again continued to November 2.

On October 30, 1981, the complaint was amended to add to the count of aggravated assault three additional counts: rape, kidnapping, and unlawful restraint. A copy of the amended complaint was furnished to defense counsel, and on November 2, 1981, Davis appeared and proceeded with the preliminary hearing without objection. He was bound over for trial on the three felony counts together with the misdemeanor count. At his request no additional bond was required.

An information was filed November 3, containing the original charge of aggravated assault plus the three additional counts. Davis appeared for arraignment that day and pleaded not guilty. On January 5, 1982, the case was set for pretrial motions. Davis failed to appear and a bond forfeiture and bench warrant were ordered. The warrant was later recalled and the forfeiture was set aside on January 11, when Davis did appear and show that he had been undergoing medical treatment on January 5. A continuance was granted on Davis's motion and the case was set for trial on March 23, 1982.

Pretrial motions were set for hearing on March 11 and March 16, 1982. Davis failed to appear at either hearing and failed to appear on the trial date, March 23, 1982. On that date the court ordered the bond forfeited again and a new bench warrant issued. Davis has not been heard from since.

The Neosho county attorney moved for judgment on the bond and the surety filed a motion to have the forfeiture set aside. A hearing was held on June 7, 1982. At the conclusion of the hearing, the trial court ruled that a judgment of default ought to

be entered against the surety and denied the surety's motion to set aside the bond forfeiture. The surety appeals.

Neither side cites us a case directly in point. The surety's primary cases are *Reese v. United States,* 76 U.S. (9 Wall.) 13, 19 L.Ed. 541 (1869); *Continental Casualty Company v. United States,* 337 F.2d 602 (1st Cir. 1964); and *United States v. D'Anna,* 487 F.2d 899 (6th Cir. 1973). In *Reese* the bond was given for appearance at the next term of court and at any subsequent term. The Court construed this to mean from term to term until the case was disposed of. When the trial court continued the case generally until such time as companion civil litigation might be disposed of — which might well be years later — it unilaterally altered the terms of the recognizance and released the surety. It did the same thing when it authorized the defendant to go to Mexico where he was beyond the reach of the bail if they wished to arrest and surrender him.

In *Continental Casualty,* the trial court permitted the defendant to leave the country on business. The court recognized that under *Reese* this would relieve the surety if done without its knowledge or consent. However, since the surety's agent was in the courtroom at the time the permission was granted, and the bond was executed thereafter, the surety remained bound and the bond forfeiture was upheld.

*D'Anna* involved a bond to appear and abide the order of the court. After plea and sentencing the trial court permitted the defendant to go free for a week on the same bond. The court, applying Michigan law, held that the surety's liability terminated upon sentencing, which was the final order in the case. The attempt to continue the surety's liability beyond that time was an attempt to alter the contract which could only be done with the consent of the surety.

The three cases taken together establish only that an appearance bond or recognizance is a contract between the principal and surety on the one hand and the State on the other. Under ordinary rules of suretyship, an agreement between the obligee (the State) and the principal which alters the terms of the obligation without the consent of the surety operates to discharge the surety.

That rule does nothing to help the surety here. It bound itself to have Davis present to answer a charge of aggravated assault. The State only demanded that the surety perform what it had

bound itself to do. The fact that the State proposed to try Davis for additional crimes when he did appear did not alter the surety's obligation to produce him on the original charge.

Appellant argues, however, that the filing of the additional charges increased its risk by making it more desirable to Davis to flee, and that in fairness the State or the court ought to have notified the surety of the additional charges.

That argument, it seems to us, mistakes the nature of the bail arrangement. As stated in *Reese* and recognized by all the authorities of which we are aware:

"By the recognizance the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court and, to the extent necessary to accomplish this, may restrain him of his liberty." 76 U.S. (9 Wall.) at 21.

It is thus the responsibility of the bail (surety) to know the whereabouts of the defendant, to watch the court's calendar, and to see to it that the defendant appears as ordered.

The only Kansas case we find comes very close to this one. In *Jones v. State,* 73 Kan. 771, 85 Pac. 302 (1906), the defendant gave bond for his appearance on one count of selling intoxicating liquor. On the day of trial he appeared only through counsel, who entered a plea of not guilty. With permission of the court the county attorney filed an amended information containing the original count but adding a second count of maintaining a nuisance. When defense counsel refused to plead to the amended information the court declared a bond forfeiture. In a later suit on the bond judgment for the State was affirmed on appeal. Although the issue is not discussed, it is apparent that the addition of a new count was thought not to alter the surety's obligation to produce the defendant on the original count, hence making the forfeiture proper.

In this case it is clear from the testimony of the surety's agent that after taking defendant's $500 the surety made no inquiry about the progress of the case with the possible exception of a telephone call to the attorney who had represented defendant at his first appearance. The agent was not even aware of the identity of the attorney appointed for Davis on October 5, 1981, until sometime after the bond was forfeited in March, 1982.

The surety's motion for relief from the forfeiture was based on K.S.A. 22-2807(2):

"(2) The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

Under the statute, the decision to set aside a bond forfeiture is left to the discretion of the trial judge, and the test to be applied is whether or not justice requires enforcement of the forfeiture. *State v. Midland Insurance Co.*, 208 Kan. 886, 889-90, 494 P.2d 1228 (1972). See also *State v. Buckle*, 4 Kan. App. 2d 250, 604 P.2d 743 (1979).

We cannot find an abuse of discretion in the trial court's refusal to set aside the forfeiture.

Affirmed.