The Honorable Marvin Smith State Representative, Fiftieth District State Capitol, Room 115-S Topeka, Kansas 66612
The Honorable Lana Oleen State Senator, Twenty-Second District State Capitol, Room 136-N Topeka, Kansas 66612
Honorable William Carpenter Administrative Judge of the Third Judicial District Shawnee County Courthouse Topeka, Kansas 66603-3922
Dear Representative Smith, Senator Oleen and Judge Carpenter:
You request our opinion concerning a pretrial release program embodied in district court rule no. 3.324 of the third judicial district. Briefly, the program which is administered by court services officers and employees of the department of corrections establishes an automatic bond schedule for pretrial release for certain crimes. Representative Smith and Senator Oleen are concerned that certain facets of this program violate the statutes which deal with pretrial release and surety bonds. Those concerns can be summarized as follows:
1. Do court services officers (CSOs) and employees of the department of corrections (DCOs) who are sworn as deputy clerks of the district court, have authority to admit to bail persons in custody?
2. Is it permissible for a court to allow an accused person to post 10% of the amount of an appearance bond?
3. Is it permissible for a court to retain 10% of an appearance bond as an administrative "fee" and must the court turn over this amount to the state treasurer pursuant to K.S.A. 1993 Supp. 20-350?
4. Does the court have the authority to impose certain conditions upon the surety relative to the surrender of the defendant?
5. If a defendant requests to be released on a professional surety bond, can the court modify the bond which is currently in place to reflect that change?
Our inquiry will focus on whether certain provisions of district court rule 3.324 violate the statutes. In order to make that determination, it is important to not only review the rule itself but to understand the mechanics of how it operates.
The rule establishes an automatic bond schedule (schedule) for certain crimes ranging from county resolution violations to "C" felonies. The schedule sets forth the amount and type of bond which the court will accept. Under certain conditions, persons in custody are not eligible for schedule bonds. (Some of those circumstances include situations involving prior bond forfeitures, extradition, prior felony convictions and if there is a threat to public safety or fear that the accused may flee the jurisdiction.) If the schedule requires a surety bond in the amount of $1,000 or less, Shawnee county residents may be released on their own recognizance if they or their surety have significant ties to the county. (E.g. real estate, employment, Kansas driver's license, etc.) Such a defendant as well as his or her surety enter into a written recognizance bond by which the defendant agrees to appear in court when required. If the defendant fails to appear, the bond is forfeited and the surety or the defendant is liable for the face amount of the bond.
If the schedule requires a surety bond in an amount over $1,000 and less than $2,500, Shawnee county residents may be released if they or their surety meet the significant ties condition and if the defendant posts an "OR cash deposit bond" (OR-CD). This bond requires that the defendant or surety deposit 10% of the face amount of the bond to the clerk of the district court. If the defendant fulfills all the conditions that the bond requires, 90% of the deposited amount is returned to the defendant and the clerk retains the remainder as an "administrative fee" which is then turned over to the county. For example, if the bond amount is $2,500, the defendant or surety pays $250 to the clerk. If the defendant complies with the bond conditions, $225 is returned to him or her and the clerk retains $25. If the defendant fails to comply and the bond is forfeited the surety or the defendant is liable for the face amount of the bond minus the amount previously deposited.
With this background, we will answer your queries keeping in mind that while courts have inherent authority to make general rules, those rules must conform to constitutional and statutory provisions. Therefore, a court cannot promulgate rules which contravene statutory provisions. GasService v. Coburn, 389 F.2d 831 (10th Cir. 1968), reversed on othergrounds; Synder v. Harris, 89 S.Ct. 1053, 394 U.S. 332, 22 L.Ed.2d 319
(1969); 21 C.J.S. Courts sec. 126. Supreme court rule 105 authorizes judicial districts to make rules necessary for the administration of their affairs to the extent that they are not inconsistent with applicable statutes.
1. Do court services officers and employees of the department ofcorrections who are sworn as deputy clerks of the district courthave authority to admit to bail persons in custody?
Paragraph 1 of district court rule 3.224 states, as follows:
 "1. Court services officers (CSO) and Shawnee county department of corrections officers (DCO) who are sworn as deputy clerks of the district court, are authorized to admit to bail persons in custody in accordance with the provisions of this order."
Absent statutory authority nonjudicial officers may not admit accused persons to bail. 8 C.J.S. Bail sec. 50. Specifically, a district court clerk has no power to take or approve recognizances and the court may not deputize the clerk to do so. Morrow v. State, 5 Kan. 563 (1869); 8 C.J.S. Bail sec. 52; 8 Am.Jur.2d Bail and Recognizance sec. 21. However, admitting a person to bail is an entirely different act from the taking, accepting or approving bail after its allowance by a court; the former is generally considered to be a judicial act to be performed by a court or judicial officer while the latter is merely a ministerial function which may be performed by any authorized officer. 8 C.J.S. Bail sec. 39, 8 Am.Jur.2d Bail and Recognizance sec. 9. The act of taking and approving the bail bond in accordance with court orders has been held to be a ministerial act which may be delegated without statutory authority. Thus, after bail has been allowed and its amount fixed by the proper judicial officer, a clerk, by direction of the court, may accept and approve a bail bond. 8 C.J.S. Bail, sec. 53.
While the choice of language in paragraph 1 of the court rule is unfortunate because it appears to allow CSOs and DCOs to admit people to bail, in actuality, this is not what occurs. The court, through its inherent rule making power, has established bond amounts and types of bonds which are required for certain crimes. Basically, the court has decreed that if certain conditions exist, a person may be released from custody. The CSOs and DCOs do not set bond amounts nor do they determine whether a surety is required. They merely determine whether the defendant meets the conditions that the court has already prescribed, and, if so, they ensure that the appropriate paperwork is filled out by the defendant who is then released. In effect, the court has preset the bond amounts, the types of bonds, and the conditions under which a defendant may be released and it is the responsibility of the nonjudicial officers to ensure that the court's order is carried out. Consequently, it is our opinion that the district court rule does not sanction the practice of nonjudicial officers admitting persons in custody to bail. Rather, the nonjudicial officers are merely performing ministerial acts pursuant to court order.
You indicate concern that this procedure may violate K.S.A. 1993 Supp. 22-2802 by releasing defendants prior to their first court appearance. This statute states, in relevant part, as follows:
 "Release prior to trial. (1) Any person charged with a crime shall, at the person's first appearance before a magistrate, be ordered released pending preliminary examination or trial upon the execution of an appearance bond in an amount specified by the magistrate and sufficient to assure the appearance of such person before the magistrate when ordered and assure the public safety."
There is nothing in the statutes which prohibits the release of a defendant on bond prior to his or her first appearance. In fact, K.S.A.22-2901(1) and (3) contemplate that a person who is arrested be taken "without unnecessary delay" to a magistrate who can then fix the terms and conditions of an appearance bond. Consequently, it is our opinion that K.S.A. 1993 Supp. 22-2802 provides that if the defendant has not been released prior to the first appearance, the defendant will be released upon execution of an appearance bond.
2. Is it permissible for a court to allow accused persons to post10% of the amount of an appearance bond?
K.S.A. 1993 Supp. 22-2802(3) and (4) provide, in relevant part, as follows:
 "(3) The appearance bond shall be executed with sufficient solvent sureties who are residents of the state of Kansas, unless the magistrate determines, in the exercise of such magistrate's discretion, that requiring sureties is not necessary to assure the appearance of the person at the time ordered.
 "(4) A deposit of cash in the amount of the bond may be made in lieu of the execution of the bond by sureties."
The statutes do not specifically address the propriety of the court's 10% OR-CD program. K.S.A. 1993 Supp. 22-2802 was originally enacted in 1970 and it drew heavily on federal bail reform law which was designed to encourage the release of defendants without money bail and to minimize the number of cases where the defendant would be detained pending trial. Kansas Judicial Council Bulletin, October, 1969, p. 45. Release on the person's own recognizance was the norm and money bail or pretrial detention in lieu thereof was contemplated only when special circumstances existed which could best be met by use of traditional bond.
K.S.A. 1993 Supp. 22-2802 contemplates three types of bonds: Appearance bonds with sureties, appearance bonds without sureties, and a cash bond in the full amount. On at least three occasions legislation has been introduced which would have variously prohibited or codified this 10% program. (House bill no. 2009 introduced during the 1985 session, house bill no. 2961 in 1986 and house bill no. 2252 in 1987). All three bills were defeated at various stages.
The court justifies its use of this program under the authority of K.S.A. 22-2814 et seq. which authorize each district court to "establish, operate and coordinate release on recognizance programs and supervised released programs". We have reviewed the legislative history of these statutes in order to determine whether the legislature intended to allow such a program under the auspices of these recognizance statutes.
These statutes were originally enacted in 1978, however, the supreme court concluded that they violated the one subject rule in article 2, sec. 16 of the Kansas constitution. State ex rel. Stephan v. Thiessen,228 Kan. 136 (1980). The statutes were reenacted in 1981 without the constitutional infirmities.
Recognizing the unfairness of a system that relied heavily on money bail and professional bondsmen, these statutes were enacted to rely less on the financial resources of the defendant and concentrate on the risk of nonappearance. Minutes, Senate Committee on Federal and State Affairs, March 23, 1978.
 "House bill no. 3129 would permit the establishment of release-on-recognizance (ROR) and supervised released programs in the state. These programs will permit the pretrial release of those selected individuals who are unable to post money bond but who have stable roots in the community indicating that they will appear at trial and their release will not jeopardize public safety. House bill no. 3129 would authorize each district court to establish, operate, and coordinate ROR and supervised released programs which would be administered by probation officers and other personnel of the district court." Proposal No. 14, Report on Kansas Legislative Interim Studies to the 1978 Legislature, Feb. 1978, p. 56.
Neither proposal no. 14 nor any of the testimony before the senate federal and state affairs committee included any discussion of a 10% cash deposit bond program. However, it is interesting to note that included in house bill no. 3129 was an amendment to then K.S.A. 1977 Supp. 22-2802
which would have allowed a defendant to execute an appearance bond and deposit with the court a sum not to exceed 10% of the bond amount — the deposit to be returned if the defendant made the required appearances. (House bill no. 3129, sec. 5). However, the senate committee struck the amendment and the 10% cash deposit provision was never enacted.
In determining legislative intent, the historical background, legislative proceedings and changes made in the statutes during the course of their enactment may be considered in determining legislative intent. Urban Renewal Agency of Kansas City v. Decker, 197 Kan. 157
(1966). Rejection by the legislature of a specific provision contained in a proposed enactment is persuasive to the conclusion that the act should not be so construed as in effect to include that provision. Cityof Manhattan v. Eriksen, 204 Kan. 150 (1969). (In Erikson, the court interpreted the eminent domain act as not including as an element of damage the cost of removal of personal property — noting that while the original bill included such a cost as an element of damage, the senate judiciary committee deleted the item.)
We cannot ignore the fact that when the ROR statutes were being considered this 10% cash deposit program — which is currently in use by the third judicial district court — was specifically rejected. Consequently, it is our opinion that the district court's 10% OR-CD program goes beyond the authority granted to district courts under the purview of K.S.A. 22-2814.
3. Is it permissible for a court to retain 10% of the OR-CD bondas an administrative fee or must the clerk of the district courtturn it over to the state treasurer pursuant to K.S.A. 1993 Supp.20-350?
In Attorney General Opinion No. 89-113, we concluded that if an appearance bond is in the form of a cash deposit, the authority of the court to retain the deposit or to apply any of it to court costs or fines depends on the statute because the court has no inherent power to do so. In the absence of such a statute, retention of the cash deposit is impermissible. While we realize that this opinion addressed K.S.A. 1993 Supp. 22-2802(4) — (a deposit of cash in the amount of the bond may be made in lieu of the execution of the bond by sureties), the rationale can be applied to the situation at hand where the court accepts a percentage of the bond amount in cash and then retains a portion of that cash as a "fee." Consequently, it is our opinion that the third judicial district court lacks the power to withhold any amount from the cash deposit because there is no statutory authorization to do so.
However, this "fee" is not a "fine, penalty or forfeiture" which would trigger the operation of K.S.A. 1993 Supp. 20-350 which requires that "all moneys received by the clerk of the district court from the payment of fines, penalties and forfeiture shall be remitted to the state treasurer." A fee is generally regarded as a charge for some service whereas a fine, penalty, or forfeiture is a pecuniary punishment imposed by a tribunal for some offense. Executive Aircraft Consulting Inc. v.City of Newton, 252 Kan. 421 (1993); Vanderpool v. Higgs,10 Kan. App. 2d 1, 2 (1984); United States v. Safeway Stores,140 F.2d 834, 839 (10th Cir. 1944); Missouri-Kansas-Texas RailroadCompany v. Standard Industries Inc., 192 Kan. 381, 384 (1964). It is our opinion that the fees collected by the district court clerk do not fall under the purview of K.S.A. 1993 Supp. 20-350 and, therefore, do not have to be turned over to the state treasurer.
4. Does the court have the authority to impose certain conditionsupon the surety relative to the surrender of the obligor?
Paragraph no. 14 of the district court rules states:
 "It is a condition on all private or professional surety bail bonds in this judicial district that sureties shall agree to remain liable on all bail bonds until all proceedings arising out of the arrest and/or case for which the bond was posted are concluded or until they are released by court order. No surety shall be released on their obligation on a bail bond once posted without court approval. Any surety or person arrested and turned in on bond by their surety, may file a motion with the court for a determination of whether or not the bail bonds should be revoked or continued."
Your concern is whether this provisions violates K.S.A. 22-2809
which provides:
 "Any person who is released on an appearance bond may be arrested by his surety . . . and delivered to a custodial officer of the court in any county in the state in which he is charged and brought before any magistrate having power to commit for the crime charged; and at the request of the surety, the magistrate shall commit the parties so arrested and endorse on the bond . . . the discharge of such surety; and the person so committed shall be held in custody until released as provided by law." (Emphasis added.)
An appearance bond is a contract between the principal (defendant) and surety on the one hand and the state on the other. State v. IndemnityInsurance Company of North America, 9 Kan. App. 2d 53, 55 (1983). Theoretically, the court is a party to the contractual obligation between the surety and the defendant and, therefore, would have the right to negotiate a condition that the surety remain liable on the bond until the conclusion of the proceedings or until the court releases the surety on the bond. The problem with this theory is that we interpret K.S.A. 22-2809
as requiring the court to discharge the surety upon the latter's request (if the defendant is surrendered) and consequently paragraph 14's requirement that sureties agree to remain liable until the criminal proceeding is over violates K.S.A. 22-2809's provision that sureties be released upon request. However, it is appropriate for the court to require that a surety file a motion for release as long as that motion is granted without delay.
5. If the defendant requests to be released on a professional suretybond, can the court modify the bond which is currently in place toreflect such a change?
Paragraph 15 of the district court rule states:
 "Bail bonds designated as OR-cash, cash or professional surety shall be written only on the terms specified by the district judge. If a defendant requests release on a professional surety bond when cash or OR-cash deposit has been specified, the CSO or DCO shall contact the judge authorizing the bond, for modification of the bond."
Whenever a defendant has been released on bond, the court issues an order which designates the bond amount, bond conditions, and the type of bond (i.e. professional surety, nonprofessional surety, OR, OR-cash deposit, OR-supervised, cash). If the defendant desires to use a professional surety, the order will reflect this fact. If the order indicates a bond with a nonprofessional surety and the defendant desires to use a professional surety instead, then paragraph 15 requires that the CSO or DCO contact the court so that the order will reflect the change.
Senator Oleen indicates concern that the court is somehow restricting the ability of a defendant to obtain the services of a professional bondsman by requiring that a defendant select the OR-CD program. This complaint is beyond our purview and moot in light of our opinion that the court's OR-CD program goes beyond the authority granted to the court under K.S.A. 22-2814 et seq. We interpret this paragraph to require that the court order reflect the type of bond the defendant is currently using as well as the conditions of the bond and we find no violation of any statute in this procedure.
Summarizing our opinion, we conclude the following:
1. District court rule 3.324 does not sanction the practice of nonjudicial officers admitting persons in custody to bail. Rather, the court has determined bond amounts and types of bonds for certain crimes and the nonjudicial officers are charged merely with executing the court's mandate.
2. K.S.A. 22-2814 et seq. do not authorize the practice of allowing a defendant to post 10% of the bond amount with the clerk of the district court.
3. Furthermore, it is not permissible for a court to retain any portion of a cash deposit. However, the "fee" which the third judicial district is currently collecting from defendants is not a "fine, penalty, or forfeiture" pursuant to K.S.A. 1993 Supp. 20-350 and, therefore, would not be required to be turned over to the state treasurer.
4. K.S.A. 22-2809 requires that a court release a surety on the bond if the latter surrenders the defendant and requests a discharge from the obligation. Consequently, a court may not impose a condition in the bond obligation which requires that a surety remain liable on the bond until the criminal proceeding is over.
5. Paragraph 15 of the district court rule requires that the court order reflect the type of bond procedure that the defendant is currently using.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm