NOT DESIGNATED FOR PUBLICATION

No. 118,526

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH P. AGRILLO,
*Defendant*,

and

SAMUEL FIELDS, dba APPLEJACKS BAIL BONDS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed August 24, 2018. Affirmed.

*Samuel W. Fields*, appellant pro se.

No appearance by appellee.

Before SCHROEDER, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Samuel Fields, doing business as Applejacks Bail Bonds, posted a $10,000 bond for Joseph Agrillo in a Douglas County criminal case. Agrillo was released on bond on the condition that he appear in all future court proceedings; Applejacks Bonds would have to pay the State $10,000 if he didn't. Months later, Agrillo failed to appear in court after being sent for drug-and-alcohol testing, so the district court entered a judgment against Applejacks Bonds.

Fields appeals the court's judgment, first challenging the court's bond conditions. But the bond conditions were appropriate. As required by K.S.A. 2017 Supp. 22-2802(9), the bond agreement set forth the conditions of Agrillo's bond: that he appear in court when ordered to do so; not intimidate witnesses; and not commit any new crimes. And Agrillo forfeited the bond by failing to appear in court. See K.S.A. 2017 Supp. 22-2807(1).

Fields also argues that the district court should have accepted payment of the $10,000 judgment from Agrillo's father rather than from Applejacks Bonds. But the court had a contract with Applejacks Bonds, not Agrillo's father. The court did not have to accept payment from a third party, such as Agrillo's father, instead of from the bonding company. We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Samuel Fields is the sole proprietor of Applejacks Bail Bonds in Lawrence, Kansas. Applejacks Bonds posted a surety appearance bond for $10,000 on behalf of Joseph Agrillo after Agrillo was charged in a single criminal case with four drug crimes in Douglas County. Agrillo's release on bond had three conditions: appear in court when ordered to do so; don't intimidate witnesses; and don't commit any new crimes.

Months later, Agrillo appeared in court for his preliminary hearing. Afterward, the court sent Agrillo to take a urinalysis exam and preliminary breath test, but Agrillo didn't return to the courtroom as ordered. Because Agrillo didn't appear back in court, the court found that Agrillo forfeited his bond and entered judgment against Applejacks Bonds for $10,000.

After the court entered its judgment, Fields asked the court to accept payment from Paul Agrillo, the defendant's father, in place of a payment from Applejacks Bonds.

The court denied Fields' request, stating that Fields could not transfer his duties as surety to a third party.

Fields then appealed to this court. Before he did so, though, Fields moved for the district court to reconsider its ruling. Recently, our court entered an order noting that the pending motion to reconsider in the district court left us without proper jurisdiction to consider the appeal since there was not yet a final judgment. See K.S.A. 2017 Supp. 60-2102(a)(4). We therefore remanded the case to the district court for 30 days "for the limited purpose of allowing for a ruling on that motion." In addition, we "ask[ed] the district court to arrange, after the court has ruled on the motion, for the Clerk to serve and file with the Clerk of the Appellate Courts a certified, file-stamped copy of a journal entry that shows the district court's ruling . . . ."

As far as we can tell, despite our remand, the district court did not rule on the motion; the Clerk of the District Court has not sent us any new filings. Our order also provided for that possibility: "If no action is taken on the motion by July 23, 2018, we will deem the motion to have been denied by the district court." Because we deem the motion denied, we will consider Fields' appeal.

ANALYSIS

I. *The District Court Correctly Found that Agrillo Forfeited the Bond by Failing to Appear.*

Fields first challenges the court's judgment of bond forfeiture, making several claims about the conditions of Agrillo's bond.

Before reaching Fields' claims, it may help to review the Kansas laws governing bail bonds. After arrest, most criminal defendants may be released from jail pending trial

or plea by posting a cash or surety appearance bond. See K.S.A. 22-2716; K.S.A. 2017 Supp. 22-2802. With a cash appearance bond, the defendant puts up enough cash as an assurance that the defendant will appear at all future court hearings. See K.S.A. 2017 Supp. 22-2802. If the defendant doesn't appear, he or she forfeits the cash bond. K.S.A. 2017 Supp. 22-2807(1).

Sometimes, the defendant doesn't have enough cash on hand to post a cash bond, so the defendant may seek financing through a surety. See *State v. Dahmer*, No. 99,384, 2009 WL 2242422, at *1 (Kan. App. 2009) (unpublished opinion). A surety is a third party who posts a surety appearance bond as a promise to pay the State the bond amount if the defendant defaults on any conditions of the bond. See K.S.A. 2017 Supp. 22-2809a(a)(1). If the defendant doesn't appear, the surety bond is forfeited, and it must be paid by the surety, who is then free to collect reimbursement from the defendant. K.S.A. 2017 Supp. 22-2807(1), (2); *Dahmer*, 2009 WL 2242422, at *1. In return for its services, the surety charges the defendant a fee, usually a percentage of the bond amount. See *Dahmer*, 2009 WL 2242422, at *1.

Fields, doing business as Applejacks Bonds, posted a surety appearance bond for $10,000 on behalf of Agrillo, the defendant in a Douglas County criminal case. Agrillo forfeited the bond, and the court entered a judgment against Applejacks Bonds. As the sole proprietor of Applejacks Bonds, Fields individually owns Applejacks Bonds and is personally responsible for its debts.

Fields challenges the court's judgment of bond forfeiture. He claims that the court didn't set forth any bond conditions in the bond agreement as required by Kansas statute. He also argues that the court impermissibly added a condition of bond not in the original bond agreement—that Agrillo submit to drug and alcohol testing. Finally, he argues that the court "stacked bonds" by not requiring Agrillo to post bond after he was charged in a separate criminal case.

Conditions of release on bond are governed by Kansas statute, K.S.A. 2017 Supp. 22-2802. Whether the district court complied with K.S.A. 2017 Supp. 22-2802 is a question of statutory interpretation over which this court has unlimited review, requiring no deference to the district court's decision. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Under K.S.A. 2017 Supp. 22-2802, the district court releases the defendant pending preliminary examination or trial after the defendant posts an appearance bond in the amount set by the court. If the defendant has been charged with a felony, the bond must be conditioned on the person's appearance in court at any time ordered by the court. K.S.A. 2017 Supp. 22-2802(1). The court may also impose any other condition it believes reasonably necessary to ensure the defendant's future appearance. K.S.A. 2017 Supp. 22-2802(1)(c). In each case, "[t]he appearance bond shall set forth all of the conditions of release." K.S.A. 2017 Supp. 22-2802(9).

Agrillo's claim that the bond agreement didn't set forth bond conditions is unsupported by the record. Agrillo's appearance bond—signed by Agrillo and Fields— had three conditions: that Agrillo appear in court when ordered to do so; that he not intimidate witnesses; and that he not commit any new crimes:

> "[D]efendant and . . . surety . . . acknowledge that they owe the State of Kansas $10,000 (dollars) if the defendant defaults in meeting the following conditions:
>
> "1. The defendant shall appear in the District Court of Douglas County, Kansas on 05/12/2016 at 3:00:00 PM and from time to time thereafter as the court may order.
>
> "2. The defendant shall not intimidate, prevent or dissuade . . . any victim or witness from attending or giving testimony at any proceeding or trial.
>
> "3. In addition, the defendant shall: NEG LOCAL AND [National Crime Information Center.]"

Around seven months after Agrillo was released on bond, the court conducted a preliminary hearing. At the hearing, the court sent Agrillo to take a urinalysis exam and preliminary breath test, but Agrillo didn't return to the courtroom as ordered. The court issued a warrant for Agrillo's arrest and later found that the bond had been forfeited by his failure to appear.

Fields argues that the court added a condition to Agrillo's bond when it ordered Agrillo to take a breath test and urinalysis exam, thus increasing the risk of forfeiture with no notice to Fields. It's true that a material modification of a bond discharges a surety. *State v. Sedam*, 34 Kan. App. 2d 624, 627, 122 P.3d 829 (2005); *First Nat'l Bank of Anthony v. Dunning*, 18 Kan. App. 2d 518, 520, 855 P.2d 493 (1993). But the record doesn't suggest that the court modified Agrillo's bond. Although the court ordered Agrillo to take drug-and-alcohol tests, the record doesn't support Fields' claim that Agrillo's bond was conditioned on the tests.

The drug-test order was authorized under a separate statutory provision, K.S.A. 2017 Supp. 22-2802(2). It says that the district court may order any defendant in a felony case to submit to a drug-and-alcohol-abuse examination to determine whether the defendant is a drug or alcohol abuser. If the court finds that the offender is a drug or alcohol abuser, then the court may order the offender to submit to treatment as a new condition of bond. K.S.A. 2017 Supp. 22-2802(2). Here, things didn't get to that point because Agrillo fled the courthouse without submitting to the ordered testing.

In any case, Agrillo forfeited his bond for *failing to appear*—a condition set when the bond was first issued. And that triggers forfeiture of the bond under K.S.A. 2017 Supp. 22-2807(1): "If a defendant fails to appear as directed by the court . . . , the court in which the bond is deposited *shall* declare a forfeiture of the bail." (Emphasis added.) Agrillo didn't return to the courtroom as ordered. Indeed, Fields acknowledges that Agrillo "fled the courthouse . . . and fled the jurisdiction of the State of Kansas."

6

Last, Fields claims that Agrillo picked up another felony charge in a separate criminal case (2017-TR-142) while out on bond. He says the court "stacked bonds" because the court didn't order Agrillo to post another bond for his new criminal charge. Fields apparently is complaining that the district court required a bond in Agrillo's first case—with Fields as the surety—but didn't require one in his other case. He argues that this is an improper bail stacking, but he cites no statute or caselaw in support of that argument.

We are familiar with caselaw in some jurisdictions forbidding bond stacking in the form of having two sureties put up bonds *in the same case* so that neither surety is fully on the hook if the defendant violates the bond conditions. Some courts forbid that practice because there's no indication any individual bonding agent or company has assessed and insured the risk of noncompliance, while some states have allowed the practice by statute. See *Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. App. 1976) (noting Tennessee statute allowing multiple sureties for a single bond). And bond stacking may violate the conditions under which the bond itself has been given. See *State v. Edwards*, No. 9311014249, 1995 WL 44267, at *5 (Del. Sup. Ct. 1995) (unpublished opinion) (noting that allowing bond stacking when prohibited by terms of the surety's power of attorney would leave surety no practical method to control financial exposure). But the only issue before us involves Agrillo's noncompliance with the bond conditions in the case in which Fields provided the bond, and only one bond was provided in that case. That bond's conditions were violated in a significant way when Agrillo failed to appear; that made bond forfeiture appropriate, no matter how many other cases may have been pending against Agrillo in the Douglas County District Court.

II. *The District Court Didn't Err by Refusing Payment from a Third Party.*

Fields second claim on appeal is that the court should have allowed Agrillo's father to pay $10,000 to the court rather than enforcing the bail bond. Fields claims that

Agrillo's father contacted him and wanted to reimburse Fields for the bond. Fields says he couldn't accept reimbursement from Agrillo's father under a federal law, the Fair Debt Collection Practices Act, so he told Agrillo's father to pay the court. He says that Agrillo's father sent a $10,000 cashier's check to the court, but the court would not accept it. He claims on appeal that the court erred by not accepting the check.

There's nothing in the record that directly proves Fields' claim that Agrillo's father agreed to pay the judgment or that he sent payment to the court. But the record does show that Fields asked the court to accept money from Agrillo's father instead of from him. The district court responded that it would not accept payment from Agrillo's father:

> "Dear Mr. Fields:
>
> "The Court will not agree to the terms of your letter. You are the surety. If Paul Agrillo wishes to make you or your insurance company whole after the forfeiture is reduced to judgment, that is between you and Paul Agrillo. I will not allow a 3rd party who has not agreed to bring the defendant to our jail, to stand trial on the pending charges. Additionally, I do not believe your duties as surety can be transferred to another person without the consent of the defendant."

Even if we assume that Agrillo's father did tender payment to the district court and that it refused to accept that payment, it was within the court's right to do so under the bond agreement. A surety appearance bond is a contract between the defendant and the surety on the one hand and the State on the other. *State v. Indemnity Ins. Co. of N. Amer.*, 9 Kan. App. 2d 53, 55, 672 P.2d 251 (1983). The full bond agreement was a contract between Agrillo, Fields, and the State: Agrillo promised to comply with the conditions of his bond; the State agreed to release Agrillo pending plea or trial; and Fields promised to pay the State of Kansas $10,000 if Agrillo violated the bond conditions. Under that agreement, Fields is responsible for paying the State $10,000 because Agrillo forfeited his appearance bond.

8

Fields wants the State to accept payment from a third party, Agrillo's father. But under contract law, Fields is responsible for the judgment unless *all* other parties to the contract agree to excuse his payment and accept payment from someone else. See *Davenport v. Dickson*, 211 Kan. 306, 310-11, 507 P.2d 301 (1973). Nothing in our record suggests that the State or Agrillo agreed to release Fields from his duty or to accept payment from Agrillo's father. Thus, Fields is responsible for the judgment and the court didn't err by refusing to accept payment from a third party.

We affirm the district court's judgment.